**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | | |
|---|---|---|
| In re: ) | | |
| Gary T. Fischbach, ) | | |
| ) | | |
| Debtor. ) | | |
| _____) | | |
| ) | | |
| Gary T. Fischbach, ) | | |
| ) | | |
| Appellant, ) | Civil Action No.: 1:12-cv-00513-JMC | |
| ) | | |
| vs. ) | **ORDER AND OPINION** | |
| ) | | |
| Centers for Medicare and Medicaid ) | | |
| Services, Palmetto Government Benefits ) | | |
| Administrators, LLC, ) | | |
| Appellees. ) | | |
| _____) | | |

Appellant Gary T. Fischbach ("Fischbach") brings this appeal of the United States Bankruptcy Court for the District of South Carolina's Order denying Fischbach's summary judgment motion and granting summary judgment in favor of Appellees, the Centers for Medicare and Medicaid Services, and Palmetto Government Benefits Administrators, LLC, ("Appellees"). Having considered the written arguments of the parties and the record before the court, the court hereby affirms the Bankruptcy Court's order for the reasons set forth below.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case are not in dispute. Dr. Gary Fischbach was a physician with his own practice, Fischbach Family Medicine and Ophthalmology, LLC. In June 1999, Fischbach entered into a Medicare Participating Physician/Supplier Agreement and became a participating supplier for Medicare beneficiaries. The agreement provided for automatic renewal every twelve

1

months unless either party sought termination of the contract. The agreement remained in effect at all times relevant to this matter.

In October 2009, Appellees notified Fischbach that certain medical services he had provided had been deemed not medically necessary and that the Medicare program had overpaid him by $397,435.46. In December 2009, Fischbach attempted to appeal the overpayment determination, providing additional explanations and supporting documentation. Appellees upheld the decision, and Fischbach did not appeal further. In March 2010, Appellees notified Fischbach that the Medicare claims he had submitted were insufficient to cover the outstanding balance of the overpayment, which had been adjusted upward to $410,600.80.

Fischbach filed for bankruptcy under Chapter 7 in April 2010, and he received his discharge on July 30, 2010. During this time and until Fischbach's practice ceased operation, Fischbach continued providing compensable services to Medicare beneficiaries. Appellees withheld payments owed to Fischbach for services rendered to Medicaid beneficiaries after his bankruptcy proceedings in an effort to collect on the overpayments for services rendered pre-petition.

On April 4, 2011, Fischbach commenced an adversary proceeding in the United States Bankruptcy Court for the District of South Carolina alleging that Appellees' withholding of post-petition Medicare reimbursement claims to recoup pre-petition Medicare reimbursement overpayments violated the Chapter 7 discharge injunction. Fischbach further sought an injunction seeking to prevent Appellees from withholding any future reimbursement payments or attempting future collection efforts. On January 9, 2012, the Bankruptcy Court issued an order on cross motions for summary judgment, granting Appellees' motion and denying Fischbach's

motion. *In re Fischbach*, 464 B.R. 258 (Bankr. D.S.C. 2012). Fischbach subsequently appealed the Bankruptcy Court's order to this court.

## LEGAL STANDARD

The district court may hear appeals from final orders issued by the bankruptcy courts. *See* 28 U.S.C. § 158(a)(1) (2006). The district court will not disturb the bankruptcy court's findings of fact unless such findings are clearly erroneous. *See* Fed. R. Bankr. P. 8013. On an appeal from a bankruptcy court decision, this court's review of questions of law is on a *de novo* basis. *See Loudoun Leasing Dev. Co. v. Ford Motor Credit Cor. (In re K & L Lakeland, Inc.),* 128 F.3d 203, 206 (4th Cir. 1997).

As a preliminary matter, the court addresses Fischbach's concern regarding Appellees' comments on the jurisdiction of this court to hear this case. *See* Appellees' Brief [Dkt. No. 12, at 6]. Appellee contends that outside of the carefully-designed administrative appeals process, "no court may review or disturb any Medicare payment determination." *Id*. The court below did not consider the validity of the Medicare payment determination or the amount allegedly owed, but instead considered whether or not recoupment is available to Appellees. In this appeal, this court similarly considers only that issue. Similar jurisdictional challenges have been raised in other cases involving the recoupment of Medicare overpayments. *See Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),* 973 F.2d 1065, 1079 (3d Cir. 1992); *Ravenwood Healthcare, Inc. v. State*, 2007 WL 1657421 (D. Md. June 5, 2007). These decisions confirm that such cases arise under the Bankruptcy Code, rather than the Medicare Statute, and that the appeal is proper under 28 U.S.C. § 158. Therefore, the court finds it has jurisdiction to hear this appeal from the Bankruptcy Judge's order.

**DISCUSSION**

The Bankruptcy Court held that Appellees did not violate the Chapter 7 discharge injunction by continuing to withhold post-petition Medicare reimbursement payments from Fischbach in an effort to recoup pre-petition Medicare reimbursement overpayments. The Bankruptcy Court further found that there was no basis to enjoin Appellees from future recoupment under the parties' Medicare Participating Physician/Supplier Agreement. In so finding, the Bankruptcy Judge endorsed the theory that the Medicare payments to Fischbach and the subsequent recoupment of overpayments occurred under a single contract and constituted a single transaction.

In this appeal, Fischbach contends that the Bankruptcy Judge erred in finding that Appellees' withholding of post-petition Medicare reimbursement payments to cover pre-petition debts constituted recoupment. Fischbach claims that his pre-petition debts should be considered under the doctrine of setoff and therefore discharged.[1]

To cast a withholding as recoupment, Appellees "must first establish an overpayment was made, and second, 'both the creditor's claim and the amount owed to the debtor must arise from a single contract or transaction.'" *In re Powell*, 284 B.R. 573, 576 (Bankr. D. Md. 2002) (quoting *Matter of Kosadnar*, 157 F.3d 1011, 1013 (5th Cir. 1998)). The automatic stay provided for in the Bankruptcy Code does not apply to recoupment, and recoupment is not prohibited by the Bankruptcy Code's discharge injunction. *Id.* at 576. In addition, "[r]ecoupment is not limited to

---

[1] In their brief, Appellees contend that because the Medicare scheme refers to the process of recovering overpayments through the withholding of future Medicare reimbursement payments as "recoupment," the court properly considered Appellees' actions as recoupment. Appellees' brief does not address the fact that several courts have found that the collection of Medicare and Medicaid overpayments by post-petition withholdings constitutes setoff and violates the automatic stay or the discharge injunction. The court agrees with the Bankruptcy Judge that the determinative issue in this case, and in this appeal, is whether Medicare's withholding of post-petition payments constitutes recoupment or whether it constitutes setoff.

4

pre-petition claims and thus may be employed to recover across the petition date." *In re TLC Hosps., Inc,* 224 F.3d 1008, 1011 (9th Cir. 2000).

Setoff, on the other hand, allows a creditor, under certain circumstances, to offset a debt it owes to a debtor against a debt owed to it by the debtor arising from a different transaction. *In re Univ. Med. Ctr.*, 973 F.2d at 1079. To apply setoff, both debts must arise before commencement of the bankruptcy action and must be mutual, i.e. the product of different transactions. *Id*. Setoff is subject to the Bankruptcy Code, and under 11 U.S.C. § 553 (2005), a creditor, such as the Appellees in this case, could not collect a pre-petition debt by withholding payment of post-petition debt owed to the debtor. *See In re Passafiume*, 242 B.R. 630, 633 (Bankr. W.D. Ky. 1999) ("Claims which arise post-petition lack the requisite mutuality [under 11 U.S.C. § 553] even if they arise with regard to work performed pre-petition").

The crucial distinction between recoupment and setoff is "whether the debt owed the creditor arose out of the 'same transaction' as the debt the creditor owes the debtor." *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 3 (1st Cir. 2004). Therefore, in order for the doctrine of recoupment to apply, both the creditor's claim and the amount owed to the debtor must arise from a single contract or transaction. *In re Powell,* 284 B.R. at 576 (internal quotations omitted).

As the Bankruptcy Judge discussed, courts have applied one of two tests to determine whether the same transaction requirement is met such that recoupment is proper. The United States Court of Appeals for the Ninth Circuit applies "the more liberal 'logical relationship' test" in which the term "transaction" can include "a series of many occurrences depending not on their immediate connection so much as their logical relationship to each other." *In re Georgetown Steel Co., LLC*, 318 B.R. 313, 330 (Bankr. D.S.C. 2004) (citing *Newbery Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d 1392, 1402-03 (9th Cir. 1996)). In contrast, the Third Circuit Court of

5

Appeals has applied the more conservative "integrated transaction" test, which requires that "the obligations at issue 'arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligations.'" *Id.* (quoting *In re Univ. Med. Ctr.,* 973 F.2d at 1081).

The Fourth Circuit Court of Appeals has not adopted either theory, but several bankruptcy courts within the jurisdiction have suggested that the Fourth Circuit has implicitly endorsed the more conservative, integrated transaction test. *See id.* ("the Fourth Circuit and cases within the Circuit are closely aligned with the 'integrated transaction' test"); *In re Camellia Food Stores, Inc.,* 287 B.R. 52, 61 (Bankr. E.D. Va. 2002) ("the Fourth Circuit Court of Appeals nonetheless does offer guidance in interpreting the same transaction by continuing to define recoupment as claims arising out of the same contract . . . [I]t appears likely the Fourth Circuit Court of Appeals will apply the integrated transaction test.").

As noted by the Bankruptcy Judge, the circuit courts of appeals are split on the specific issue of whether withholding post-petition Medicare and Medicaid reimbursement payments to recoup pre-petition reimbursement overpayments constitutes recoupment or setoff. Further, "neither the Medicare statute, the Bankruptcy Code, nor their respective legislative histories" expressly address this issue. *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 4 (1st Cir. 2004).

In *University Medical Center*, the Third Circuit Court of Appeals applied its integrated transaction test in determining whether the Department of Health and Human Services ("HHS") could withhold payments for services rendered after a bankruptcy petition by the University Medical Center ("UMC") in an attempt to recover pre-petition Medicare reimbursement overpayments. 973 F.2d at 1081. The court determined that recoupment was not applicable in

6

such cases given the annual accounting process established by the Medicare Act. *Id.* Specifically, the court held that

> the ongoing relationship that exists between a Medicare provider and HHS is not sufficient to support the conclusion that Medicare overpayments made to UMC in 1985 arise from the same transaction, for the purposes of equitable recoupment, as Medicare payments due UMC for services provided in 1988. The 1988 payments were independently determinable and were due for services completely distinct from those reimbursed through the 1985 payments. Further, the entire account reconciliation process established by the Medicare Act and regulations works on an annual basis.

*Id*. Essentially, the court determined that each cost year defined a single transaction such that withholding post-petition payments to recover overpayments from prior years constituted an improper set off rather than recoupment.

The First, the Ninth, and the District of Columbia Circuit Courts of Appeals have reached the opposite conclusion. In *In re TLC Hospitals, Inc.*, the Ninth Circuit applied its "logical relationship" test to the issue of recoupment of pre-petition overpayments through the withholding of post-petition reimbursement payments finding "the distinctive Medicare system of estimated payments and later adjustments does qualify as a single transaction for purposes of recoupment." 224 F.3d at 1012. In direct contradiction to the Third Circuit's holding in *University Medical Center*, the court found that the timing of the audit was not material to the relationship between the overpayments and underpayments, noting that "a reality of the complex Medicare system is that any overpayments will not be discovered, and accordingly the 'retroactive adjustment' will not occur, until after the end of the cost year in which the overpayments were made." *Id*. at 1013.

The District of Columbia Court of Appeals reached a similar conclusion, looking to the language of the Medicare statute and finding that "Congress rather clearly indicated that it

7

wanted a provider's stream of services to be considered one transaction for purposes of any claim the government would have against the provider." *United States v. Consumer Health Services of Am., Inc.*, 108 F.3d 390, 395 (D.C. Cir. 1997). The court rejected the analysis employed by the Third Circuit which limited the transaction based on the time periods in which the claims were made, stating that it is not the "the frequency of the audit [that] appropriately defines the 'transaction,'" but Medicare's statutory scheme, which "requires the Secretary [of HHS] to take into account pre-petition overpayments in order to calculate a post-petition claim." *Id*.

Following the Ninth Circuit and the District of Columbia Circuit decisions above, the First Circuit stated that "subsection 1395g(a) does not compartmentalize the [Health Care Financing Administration's ("HCFA")] liability for provider services into a year-to-year determination, but that it expressly defines and modifies HCFA's liability for the provider's current cost-year services as the provider costs incurred in that year with necessary adjustments on account of previously made overpayments or underpayments." *In re Holyoke Nursing Home, Inc.*, 372 F.3d at 4 (internal quotations omitted). The court adopted the District of Columbia Circuit's characterization of the Medicare scheme as one involving a "*stream of services* to be considered *one transaction"* for the purpose of the government's claims against the provider. *Id.* (emphasis added) (quoting *Consumer Health Services of Am., Inc.*, 108 F.3d at 395). The court also stated that "the interpretation favored by the District of Columbia Circuit and the Ninth Circuit has been embraced by the overwhelming majority of district and bankruptcy courts nationwide which have ruled to date." *Id*; *see also In re Dist. Mem'l Hosp. of, Sw. N. Carolina, Inc.*, 297 B.R. 451, 456 (Bankr. W.D.N.C. 2002) (collecting bankruptcy court cases in which courts have allowed recoupment for overpayments for Medicare and Medicaid services.)

The Bankruptcy Judge in the instant case acknowledged that district courts and bankruptcy courts within the Fourth Circuit are divided on this particular issue. *Compare Ravenwood Healthcare, Inc. v. State* 2007 WL 1657421 (D. Md. June 5, 2007) (finding "pre-petition and post-petition payments amount to one transaction" in a case involving Medicaid payments and holding recoupment was appropriate) *and In re Dist. Mem'l Hosp. of, Sw. N. Carolina, Inc.*, 297 B.R. 451, 456 (Bankr. W.D.N.C. 2002) (in a Medicaid case, finding that "application of the rules from *Consumer Health Services* and *TLC Hospitals* requires a holding that the ongoing stream of services, advances, and reconciliations constitutes a single transaction, and that recoupment be allowed in this case"), *with In re Quality Link-Bertie, LP*, 2001 WL 34388128, at *5 (Bankr. W.D.N.C. 2001) (following the *University Medical Center* decision and finding that Medicaid payments for the reporting year at issue were "separate and distinct transactions from the overpayments due' for prior years) *and In re Colonial Health Investors, LLC*, 2001 WL 34388127 (Bankr. W.D.N.C. 2001) (same).

This court agrees with the majority view and the Bankruptcy Court's decision below that recoupment of pre-petition Medicare overpayments by withholding post-petition Medicare reimbursement payments does not violate the discharge injunction. As the Bankruptcy Judge noted, the Medicare system is constructed to ensure that Medicare participants are reimbursed quickly for services they provide and to ensure a steady stream of funding to the providers and suppliers of these services. As a result, the Medicare reimbursement system necessarily involves overpayments and underpayments and as such, retroactive adjustments for overpayments and underpayments are an integral and well-established component of the system. Fischbach's

argument that "suppliers" [2] of services, which he is, should be treated differently than "providers of services"[3] because the two have procedurally different methods of submitting and collecting initial payments is not relevant to the issue of reimbursement for over and underpayments; the statutory scheme assumes that readjustments for overpayments and underpayments will be necessary for both categories of Medicare providers. *See e.g., Barth v. Blue Cross & Blue Shield of S. Carolina*, 434 F. Supp. 755, 756 (D.S.C. 1977) (recognizing recoupment against a physician for overpayments through withholding amounts paid on future claims). Moreover, both providers and suppliers rely on the timely payment of Medicare funds and Medicare, in turn, relies on participants to submit claims for services that are reasonable and necessary. As the Bankruptcy Judge noted, the relationship between providers or suppliers and Medicare is built on a system of constantly balancing payments made and readjustments for over and underpayments such that it is rational to treat the interaction between the parties as a single, integrated transaction.

Further, equitable considerations support the Bankruptcy Judge's decision. *See Georgetown Steel*, 318 B.R. at 334 (stating that "recoupment is an equitable doctrine"). It would be inequitable to allow Fischbach to accrue more than $400,000 in Medicare reimbursement overpayments, file for bankruptcy, and then continue to receive full Medicare reimbursement for the new reimbursement claims he submits. Appellees were overcharged for services provided by Fischbach, and they paid on those charges. Fischbach should not now be allowed to retain a windfall as a result of Medicare's overpayments while continuing to receive the benefits of

---

[2] 42 U.S.C. § 1395x(d) defines a "supplier" as "a physician or other practitioner, a facility, or other entity (other than a provider of services) that furnishes items or services under this subchapter."

[3] 42 U.S.C. § 1395x(u) defines a "provider of services" as "a hospital, critical access hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or, for purposes of section 1395f(g) and section 1395n(e) of this title, a fund."

Medicare reimbursements. *See In re Holyoke Nursing Home, Inc.*, 372 F.3d at 4. Fischbach's argument that the recoupment of his pre-petition "earnings" is antithetical to the fresh start that bankruptcy is meant to provide is undercut by the fact that the payments made to him were subject to review, reopening, and payment readjustment in the event the reimbursement claims were found to have been improperly paid.

Additionally, the court finds that public policy supports the Bankruptcy Judge's decision and the majority view of this issue. Medicare and Medicaid were "not instituted for the purpose of benefitting health care providers. The business benefit that the debtor derives from participating in [these programs] is incidental to the Program's purpose as a health insurance system." *In re Dist. Mem'l Hosp. of, Sw. N. Carolina, Inc.*, 297 B.R. at 457 (considering Medicaid in particular) (citing *In re Tri County Home Health Serv.*, 230 B.R. 106, 113 (Bankr. W.D. Tenn. 1999). Therefore, it is proper that Appellees be able to recoup the pre-petition Medicare reimbursement overpayments from Fischbach's post-petition reimbursement claims, such that those recouped funds may be used to benefit other Medicare providers and serve the ultimate purpose of the program.

The Court also agrees with the Bankruptcy Judge's conclusion that the Fourth Circuit's apparent embrace of the more conservative integrated transaction test does not conflict with the holding in this case. As noted by the Bankruptcy Judge, the Fourth Circuit's acceptance of the Third Circuit's integrated transaction test is not firmly established, as it is based on an unpublished opinion[4] affirming a case which is markedly different from the case at bar. Furthermore, despite the Third Circuit's use of the integrated transaction test to resolve the

---

[4] *In re Thompson*, 182 B.R. 140, 149 (Bankr. E.D. Va. 1995), *aff'd*, 92 F.3d 1182 (4th Cir. 1996) (finding recoupment improper where the Police Officer's Retirement System sought to recoup previous overpayments of disability benefits from retired police officer's retirement benefits).

specific issue on appeal here, the court agrees with the *Consumer Health Services* court which stated that "[e]ven under the Third Circuit's stricter standard, we believe that Consumer's claim for post-petition services and the pre-petition overpayments qualify" as a single, integrated transaction.  The First circuit implicitly agreed, finding the Medicare provider agreements constituted a single, ongoing and integrated transaction." *In re Holyoke Nursing Home, Inc.*, 372 F.3d at 5 (1st Cir. 2004).   Therefore, the court does not consider the Bankruptcy Judge's holding to be in conflict with Fourth Circuit precedent.

Finally, Fischbach's citation to isolated and unrelated sections within Medicare's statutory scheme recognizing that in some situations, recoupment will not be possible because of situations such as a prior bankruptcy, does not, as Fischbach suggests, confirm that Congress intended recoupment of Medicare overpayments to be limited by the Bankruptcy Code.  *See* 42 U.S.C. § 1395gg (recognizing that in some cases, overpayments cannot be recouped); 42 U.S.C. § 1395ddd (disallowing a repayment plan for the recovery of payments where there is reason to believe the supplier may file for bankruptcy); 42 U.S.C. § 1395y (providing that the United States may not recover overpayments from a third party administrator if  "the third-party administrator would not be able to recover the amount at issue from the employer or group health plan  . . . due to the insolvency or bankruptcy of the employer or plan").  The sections cited merely recognize that in some instances, bankruptcy may have already discharged a debt owed to Medicare.  These sections do not provide a blanket limitation on the recoupment of debts owed to Medicare when bankruptcy is at issue.

## CONCLUSION

For the reasons set forth above, the court **AFFIRMS** the Bankruptcy Court's order issued on January 9, 2012, denying Fischbach's summary judgment motion and granting summary judgment in favor of Appellees.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 22, 2013
Greenville, South Carolina